## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**TROY EUGENE JOHNSON**,<br><br>Debtor. | Case No. **06-60210-7** |
| **SARAH AU**, **SHUI-CHEUEN AU**, **CHOI LUNG LEE**, **WAI-MAN AU**, and **CHI CHIN**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**TROY EUGENE JOHNSON**,<br><br>Defendant. | Adv No. **06-00105** |

## MEMORANDUM  OF  DECISION

At Butte in said District this 13th day of June, 2007.

Plaintiffs initiated this adversary proceeding seeking exception from the discharge of

Debtor/Defendant Troy Eugene Johnson ("Johnson"), pursuant to 11 U.S.C. § 523(a)(6), of their

wrongful death claim[1] against Johnson which arose from a pickup truck accident in which

Defendant was driving and their daughter was a passenger who suffered injuries resulting in her

death.  Trial of this cause was held after due notice at Great Falls on May 22, 2007.  Plaintiffs

were represented by attorney James A. Patten of Billings, Montana.  Johnson appeared and

---

[1]The wrongful death claim is unliquidated.

1

testified, and was represented by attorney D. Randy Winner of Great Falls, Montana. Johnson's

mother Tami Gaines ("Gaines") testified, as did brake shop owner Ed Mutch ("Mutch") of

Billings. Exhibits ("Ex."), 1, 2, A, B, C, and D were admitted into evidence. At the conclusion

of the parties' cases-in-chief the Court ruled from the bench that the Plaintiffs had failed to

satisfy their burden of proof under § 523(a)(6) to show subjective intent by Johnson to cause

willful and malicious injury to the Decedent, and the Court directed that judgment be entered for

Johnson dismissing the complaint.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b). This

is a core proceeding to determine dischargeability of a particular debt under 28 U.S.C. §

157(b)(2)(I). This Memorandum of Decision includes the Court's findings of fact and

conclusions of law pursuant to F.R.B.P. 7052 (applying F. R. Civ. P. 52 in adversary

proceedings).

### FINDINGS OF FACT

The parties filed a proposed Final Pretrial Order on April 19, 2007, which was approved

and signed by counsel. The Court approved the Final Pretrial Order by Order entered on April

20, 2007, (Docket No. 21), after modifying one sentence. The approved Final Pretrial Order set

forth the following agreed facts:

> A. As of the commencement of this case, Plaintiffs asserted a wrongful
> death claim against the Defendant for the death of Wai Au Man.

> B. Defendant holds an applied science degree in general management and
> diesel technology from Wyoming Technical Institute. Defendant has had work
> related experience in the mechanical repair of agricultural equipment and in the
> repair and maintenance of semi-trucks.

> C. Defendant was engaged to be married to the Decedent Wai Au Man.

2

Defendant and the Decedent moved to Santa Barbara, California in September 2003 where she was enrolled in college.

D.  Prior to moving to Santa Barbara Defendant acquired a 1973 International pickup.  After acquisition the Defendant made modifications to the truck converting it from a two wheel drive to a four wheel drive.  Defendant did so by adding a transfer case and a front axle.  The Defendant also repaired the brakes, putting in a wheel cylinder kit and brakes, which he purchased from NAPA Auto Parts store.  Defendant also put shock towers in the rear end.  The 1973 International truck became operational in 2002 and became the primary means of transportation approximately one week before the Defendant and Wai Au Man moved to California.

E.  Defendant put in wheel cylinders a few times on other cylinders and put brakes on vehicles maybe 20 to 25 times, including at least 10 times installing air brakes while employed at Motor Power Kenworth, a semi tractor sales and service company, with the remainder on personal vehicles or helping friends.  Defendant knew how to install the wheel cylinder and brakes when he put them on the 1973 International pickup.

F.  Upon arriving in Santa Barbara, the left front brake of Defendant's pickup locked up, rendering the vehicle undriveable.  Defendant disabled the left front brake by removing the brake shoes.  To prevent the braking system's hydraulic fluid from draining out of the now disabled left front brake mechanism, Defendant crimped the hydraulic line leading to that brake.  During the following three weeks, Defendant drove the vehicle through the environs of the City of Santa Barbara with only one apparent braking problem.  That problem occurred when Defendant was forced to apply the brakes hard to avoid an accident.  In that instance the vehicle's steering pulled to the right, which tendency Defendant counteracted by putting leftward pressure on the steering wheel.

G.  Shortly after arriving in Santa Barbara, the Defendant and Wai Au Man found a place to live about 15 minutes from the college campus.

I[2].  While in Santa Barbara Defendant repaired the u-joint, put a rear shock absorber back on, and replaced the studs in the steering linkage.  Defendant specifically replaced four "studs" and nuts holding the steerage linkage to the spindle on the left front wheel.

J.  On September 22, 2003, Defendant had picked up Wai Au Man at the college campus and was returning home.  While on the freeway traveling at 50 to

---

[2]The Final Pretrial Order does not include an agreed fact "H".

55 miles per hour, the Defendant noticed free play in the steering wheel and when the Defendant steered off the freeway the steering was non-responsive.  There were vehicles stopped at a stop light at the end of the off ramp and the Defendant began to brake but had no steering causing him to panic and hit the brakes.  The 1973 International pickup then suddenly veered off to the right and rolled over severely injuring Wai Au Man.  She died in hospital four days later.

Additional facts were derived from the testimony and exhibits.

Johnson testified that the Decedent Wai Au Man used her American name "Penny".

Gaines testified that Penny was Johnson's true love.

Johnson's studies at Wyoming Technical Institute ("Wyo Tech") included repairs on brake systems similar to hydraulic brakes, and front end suspension and steering.  Johnson testified that his courses at Wyo Tech included some safety material with respect to how to repair semi trucks, but he testified that the course work did not include safety aspects of driving with faulty brakes in passenger cars or pickups.  He testified that Wyo Tech did not teach that it is unsafe to drive with one disabled brake.  Ex. A shows that Johnson did well in his course work, and he received high grades at Wyo Tech.  However, he testified that he has never been employed in an automobile repair shop.

After he and Penny moved to Santa Barbara, Johnson testified that while he was replacing the nuts holding the steering linkage to the spindle, he noted that the nuts were loose.  He tried to tighten them but he believed the nuts or the studs were stripped.  Ex. B.  He testified that he went to an auto parts store and bought new nuts and replaced them in the parking lot.  He testified that he also took the studs out of the spindle and replaced them with new studs.

Despite his repairs, Johnson testified that he dismantled the left front brake because he had to order replacement parts and did not have enough money to pay for them.  The left front

4

brake was locked up and the pickup, which he needed to get to work, was not driveable, so he testified that he disabled the left front brake to make the vehicle driveable.  He admitted that he knew it was not safe to drive the pickup without a left front brake, but he later testified that he did not think of it until later after the accident, when looking back on it he did see that it was unsafe.  Johnson testified that he drove the pickup without the left front brake for three weeks from September 2, 2003, to September 22, 2002, and that the brakes worked normally except for the single instance when he braked hard and had to counter a pull to the right by steering left.

On September 22, 2003, Johnson testified, while driving on the freeway off ramp he noticed he had no steering and saw cars backed up at the end of the ramp.  He testified that he panicked and braked hard.  The pickup pulled to the right, ran up the embankment and rolled over on the right or east shoulder causing Penny severe head injuries.  Ex. 1[3], pp. 6, 8.  Johnson suffered only minor scrapes.  Ex. 1.  Plaintiffs' Ex. 1 indicates that Johnson and Penny were not wearing their seat belts.  Ex. 1, pp. 13 of 27, 18 of 27, 21 of 27 .  Ex. 1 describes that Penny was partially ejected, and her right arm and head were pinned under the cab of the pickup, which was resting on the passenger side after the pickup rolled, and her right leg was pinned under the dashboard.  Ex. 1, pp. 17 of 27, 23-24 of 27.

Johnson's mother Gaines testified that she flew to Santa Barbara shortly after learning of the accident on September 22, 2003.  She testified that Johnson stayed at the hospital with Penny until she died.  She described Johnson as grief stricken and very sad, and that he did not eat or sleep while at the hospital and blamed himself for the accident, repeating that it was his fault.

---

[3]Plaintiffs' Ex. 1 is the preliminary report of the accident.  Johnson testified that he did not read it but has seen some of it.

Gaines testified that when Johnson was interviewed by the police he was not thinking normally.

The pickup was inspected after the accident, and the inspection concluded, among other things, that all 4 bolts were missing from the steering arm on the left steering wheel knuckle, and the rear brakes did not work[4].  Ex. 1.  Johnson testified that the rear brakes worked fine for him and he was not aware that they were not working at the time of the accident.  He testified that he had driven the pickup earlier on the day of the accident, including for a period of extended braking down a long grade hill during which the brakes worked, and he believed that he was driving at the time of the accident with three working brakes.

Ex. 1 concludes that the primary cause of the collision was that Johnson was driving a vehicle which was in an unsafe condition, and noted additionally that the passengers were in violation of the California statute requiring that they be properly restrained by a safety belt.  Ex. 1, p. 27 of 27.

Johnson pleaded guilty to negligent vehicular homicide.  He testified that he told the police that the accident was his fault because he crimped the left front brake line.  Ex. 1, p. 19 of 27.  However, Johnson later testified that he did not consider the vehicle unsafe before the accident, but that looking back after the accident he could see that the mechanical failure was likely.  He testified that he changed his opinion after the accident, and that before the accident he did not think driving the pickup without the left front brake was unsafe.  He testified that he did not intend to cause the accident,  and no evidence exists in the record of such intent to cause an

---

[4]The "Service Brake System" section of the mechanical inspection on the last page of Ex. 1 indicates that "the right front was the only functional brake", based on a bar test.  However, further tests to the rear brakes show the presence of fluid to the rear brakes and hydraulic pressure at the rear wheels.

accident, or injury to Penny.

**Ed Mutch Testimony**.

Plaintiffs called Ed Mutch ("Mutch"), owner/operator of The Brake Shop in Billings,

Montana, to testify as an expert. Mutch has an ASE certification related to front end/brake

service. He has been re-certified by ASE two or three times and has twelve years' work

experience in automotive brake repair, including steering repairs and diagnosing brake problems.

Mutch testified that he has owned an International Scout and is familiar with International

front ends and brake systems. He testified that he reviewed Ex. 1 before arriving at his opinion

on whether an accident is substantially certain to occur when driving an International pickup

without front end brakes if the steering comes loose. On cross examination Mutch admitted that

he has never spoken with Johnson. Mutch prepared a written expert report, which was not

offered for admission into evidence. He admitted that his report is inaccurate in describing

Johnson as a trained automotive technician.

The Court sustained Johnson's objection and prohibited Mutch from giving an opinion

on the Defendant's subjective mental state under § 523(a)(6). However, the Court allowed

Mutch to testify as an offer of proof. Mutch testified that people who drive their vehicles every

day know their vehicles and know when something is wrong, and that given Johnson's education

at Wyo Tech and training Mutch's opinion is that Johnson would have to have known that the

pickup was unsafe to drive without a left front brake and loose steering. Based upon Ex. 1's

report that the inspectors could not get the rear brakes to work and the steering problem, Mutch

concluded that the accident was certain to occur. Mutch testified that it is illegal in many states,

although not including Montana, as well as unsafe to operate a vehicle with a disabled front

brake.

## DISCUSSION

The Court concluded at the hearing that the Plaintiffs failed to satisfy the requirement under § 523(a)(6) to prove subjective intent by the Defendant Johnson to cause willful and malicious injury to Penny. In sustaining Defendant's objection to Mutch's opinion testimony, the Court exercised its gatekeeping function, which applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge such as Mutch's. *U.S. v. Mendoza-Paz*, 286 F.3d 1104, 1112 (9th Cir. 2003), *cert. denied*, 537 U.S. 1038, 123 S.Ct. 573, 154 L.Ed.2d 459 (2002); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). A trial judge is not disabled from screening expert testimony offered pursuant to Fed. R. Evid. 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). "To the contrary, under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.; United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997), *cert. denied*, 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997); Russell, *Bankruptcy Evidence Manual*, 2000 Ed., § 104.1.

Section § 523(a)(6). The governing statute reads, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

\* \* \*

      (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6). Prior to 1998, there was a split among the Circuits concerning what

8

constituted "willful and malicious" conduct under § 523(a)(6).  Many courts, including the Ninth

Circuit Court of Appeals, did not require proof of intent to injure, but only that an intentional

wrongful act necessarily produced harm, and was without just cause or excuse.  *See Impulsora*

*Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir.1986).  The

Supreme Court, however, overruled *Cecchini* and its progeny in *Kawaauhau v. Geiger*, 523 U.S.

57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).  In *Geiger*, the Supreme Court ruled that a debt arising

from a medical malpractice judgment, which sounded in negligent or reckless conduct, did not

fall within the statutory exception of 11 U.S.C. § 523(a)(6).  *Id*. at 63- 64. In so deciding, the

Supreme Court stated:

> The word "willful" in (a)(6) modifies the word "injury," indicating that
> nondischargeability takes a deliberate or intentional injury, not merely a deliberate
> or intentional act that leads to injury. Had Congress meant to exempt debts
> resulting from unintentionally inflicted injuries, it might have described instead
> "willful acts that cause injury." Or, Congress might have selected an additional
> word or words, i.e., "reckless" or "negligent," to modify "injury."

*Geiger,* 523 U.S. at 57-58.  As determined by the Supreme Court, the injury itself must be

deliberate or intentional, "not merely a deliberate or intentional act that leads to injury." *Geiger*,

523 U.S. at 61–62.  *See also In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999); *In re Baldwin*, 245

B.R. 131 at 135-36.  Plaintiffs' contentions that Johnson intentionally drove the pickup without a

brake and loose steering may be deliberate or intentional acts, but do not show deliberate or

intentional injury.

   *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001), *cert. denied*, 533

U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001), was one of the earlier decisions to discuss §

523(a)(6) following the Supreme Court's ruling in *Geiger*.  In *Jercich*, the Ninth Circuit held

that:

> [C]onsistent with the approaches taken by the Fifth [*Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998)] and Sixth [*Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999)] Circuits, that under *Geiger*, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct. We believe that this holding comports with the purpose bankruptcy law's fundamental policy of granting discharges only to the honest but unfortunate debtor.

*Id*. at 1208.  The Ninth Circuit Court of Appeals has more recently discussed the state of mind

required under the willful prong of § 523(a)(6):

> According to the Restatement, an action is intentional if an actor subjectively "desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it." RESTATEMENT (SECOND) OF TORTS § 8A (1964).  The *Geiger* Court, however, did not expressly adopt this subjective Restatement formulation,[5] and the lower courts have differed over whether to adopt a strict subjective test when applying § 523(a)(6).
>
> The Sixth Circuit's interpretation of § 523(a)(6) exemplifies the strict subjective approach, in which a debt is nondischargeable under § 523(a)(6) only if the debtor intended to cause harm or knew that harm was a substantially certain consequence of his or her behavior. In *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir.1999), the debt arose from a legal malpractice action against the debtor. The creditor argued that the debt was nondischargeable under § 523(a)(6)'s "willful and malicious injury" provision. While *In re Markowitz* acknowledged that *Geiger* had not expressly adopted the Restatement's subjective "substantially certain" language, it nonetheless concluded that "from the Court's language and analysis in *Geiger*, we now hold that unless 'the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and

_____

[5]  While the *Geiger* Court did not focus on this section of the Restatement (dealing with situations in which an actor is "substantially certain" that harm will result from his acts), the Eighth Circuit opinion that the Court affirmed addressed this Restatement provision in some detail, equating § 523(a)(6) with intentional torts and defining such torts as actions where an actor subjectively desires to cause an injury or believes that an injury is substantially certain to result from his or her acts. *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997) (en banc), *aff'd*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

malicious injury' as defined under § 523(a)(6)." *Id*. at 464 (quoting RESTATEMENT (SECOND) OF TORTS § 8A (1964)).

Conversely, the Fifth Circuit's interpretation of § 523(a)(6) exemplifies the objective approach, in which debt is nondischargeable under § 523(a)(6) either if there is a subjective intent to cause an injury or if there is an objective substantial certainty of harm. In *In re Miller*, the creditor sought a determination that a state court judgment for misuse of trade secrets constituted a nondischargeable debt. While acknowledging that *Geiger* "certainly eliminates the possibility that 'willful' encompasses negligence or recklessness," *In re Miller* held that "the label 'intentional tort' is too elusive to sort intentional acts that lead to injury from acts intended to cause injury. Rather, either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful ... injury' in § 523(a)(6)." 156 F.3d at 603.

While this difference between the objective approach taken by the Fifth Circuit and the subjective approach taken by the Sixth Circuit is evident from *In re Miller* and *In re Markowitz*, this difference has been overlooked by courts in the Ninth Circuit when evaluating § 523(a)(6) claims. For example, in *Baldwin v. Kilpatrick (In re Baldwin)*, 245 B.R. 131 (9th Cir. B.A.P. 2000), *aff'd*, 249 F.3d 912 (9th Cir. 2001), a creditor who had obtained a state court judgment against the debtor for assault and battery brought an adversary proceeding to except that judgment debt from discharge under § 523(a)(6). Because the debtor "was an active participant in the violent striking" of the creditor, the BAP easily found that the assault and battery judgment stemmed from a "willful and malicious injury" to creditor's person and, therefore, was nondischargeable. *Id*. at 137. In so holding, however, the BAP declared: "The Fifth Circuit [in *In re Miller* ] held that ... 'either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful ... injury' in § 523(a)(6).' The Sixth Circuit [in *In re Markowitz*] has also adopted this approach. We similarly adopt this standard." *Id*. at 136 (citations omitted).[6]

This court too committed a similar oversight when it examined, for the

_____

[6] The BAP correctly observed that *In re Baldwin* endorsed the *In re Miller* test without recognizing the distinction between the Fifth and Sixth Circuits' objective and subjective approaches. *See In re Su*, 259 B.R. at 913 ("The key difference between the *Miller* and *Markowitz* holdings is that *Markowitz* followed the Restatement's requirement that the debtor believe that his actions will with substantial certainty cause injury, while in *Miller* the subjective belief of the debtor as to the certainty of the harm was not controlling. A number of courts have failed to recognize this distinction. In *In re Baldwin*, we also ignored this important distinction.") (citations omitted).

first time, the question of intent in the context of § 523(a)(6)'s willful injury requirement. In *In re Jercich*, a creditor who had obtained a state court judgment for unpaid wages against his former employer, a Chapter 7 debtor, sought to except that judgment debt from discharge pursuant to § 523(a)(6). Focusing on the subjective intent of the employer, this court held "that under *Geiger*, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." 238 F.3d at 1208. Given that the employer in *In re Jercich* knew both that he owed wages to his employee and that his failure to pay those wages would, with substantial certainty, harm his employee, this court concluded that the debt owed the employee was nondischargeable under § 523(a)(6). *Id.* at 1208-09.

The holding in *In re Jercich* is clear: § 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain. Unfortunately, however, the opinion also states that the subjective inquiry it endorsed is "consistent with the approaches taken by the Fifth and Sixth Circuits," in *In re Miller* and *In re Markowitz. Id.* We believe that this claim of consistency is not completely accurate.

*Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1143-45 (9th Cir. 2002).  As clearly articulated by the

Court in *In re Su*, to except a debt from discharge under § 523(a)(6), post-*Geiger*, the appropriate

legal standard is whether the offending party possessed either a subjective intent to cause harm or

a subjective belief that harm was substantially certain to result from his or her actions.  *See also*

*Patch Rubber Co. v. Schmersey (In re Schmersey)*, 21 Mont. B.R. 532 (Bankr. D. Mont. 2003)

(Generally discussing the above standards, particularly that the willful and malicious standard

cannot be conflated).

The Court in *Su* also explained that, in the Ninth Circuit, the malicious injury requirement

of § 523(a)(6) is examined separately from the willful requirement.  *Su*, 290 F.3d at 1146.  More

recently, the Ninth Circuit Court of Appeals explained:

We analyze the willful and malicious prongs of the dischargeability test separately. *See Carrillo v. Su (In re Su )*, 290 F.3d 1140, 1146 (9th Cir.2002) (noting with approval that "in *In re Jercich*, we treated the 'malicious' injury

12

requirement of § 523(a)(6) as separate from the 'willful' requirement"); *see also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1207-09 (9th Cir.2001).

*In re Sicroff*, 401 F.3d 1101, 1105-06 (9th Cir. 2005).  In looking at the "malicious" prong of § 523(a)(6), the court in *Sicroff* went on to explain:

> An injury is "malicious," as that term is used in Section 523(a)(6), when it is: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209. Within the plain meaning of this definition, it is the wrongful act that must be committed intentionally rather than the injury itself. *See Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir.1997) ("This four-part definition does not require a showing of .... an intent to injure, but rather it requires only an intentional act which causes injury.").

Plaintiffs contend in the Final Pretrial Order that Johnson's act of driving the pickup with the disabled front brake and other repairs was intentional and wrongful, and that based on Johnson's knowledge of auto mechanics the resulting injury was substantially certain and Johnson knew that it was substantially certain.  The Court concluded at trial that Mutch conflated Johnson's acts with the injury which is not allowed under the controlling authority set forth above.

The Court found, based on the testimony, that it was as likely as not that when Johnson drove the pickup onto the freeway there were still three brakes working.  The evidence shows that Johnson drove the pickup for 3 weeks after disabling the left front brake with only a single instance of swerving before the accident, so he clearly felt at the time that he was able to drive the pickup, that an accident or injury was not substantially certain to result.  Johnson testified that he had descended a long grade hill braking continuously shortly before the accident and he thought the rear brakes were functioning.  The analysis from the brake inspection on the last page of Ex. 1 was inconclusive.  The rear brakes failed the bar test, but brake fluid and hydraulic

13

pressure existed at the rear wheels at the time of the inspection.

The evidence in this case presented a set of circumstances resembling a "perfect storm" where the sudden loss of steering coupled with Johnson's disabling of the front brake, and the Decedent's failure to use her seat belt, which is shown by Plaintiff's own exhibit, resulted in her partial ejection from the pickup when it rolled, serious head injuries and her death.  But as tragic as the facts are, they do not satisfy the high standard under § 523(a)(6) for exception from Johnson's discharge for willful and malicious injury to the Decedent.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b).

2.  This is a core proceeding to determine dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I).

3.  Plaintiffs failed to satisfy their burden of proof under 11 U.S.C. § 523(a)(6) for exception from Defendant's discharge for willful and malicious injury by the Defendant to another.

**IT IS ORDERED** a separate Judgment shall be entered in conformity with the above dismissing the Plaintiffs' complaint filed in this adversary proceeding.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

14